No. 38,828

J. B. PATTERSON, *Plaintiff*, v. MARIAN F. JUSTUS, as Election Commissioner, *Defendant*.

(245 P. 2d 968)

Opinion filed June 20, 1952.

*George Siefkin*, of Wichita, argued the cause, and *Robert C. Foulston, Andrew F. Schoeppel, Samuel E. Bartlett,* and *George B. Powers,* all of Wichita, were with him on the briefs for the plaintiff.

*Robert H. Nelson*, county counselor of Sedgwick county, argued the cause and was on the briefs for the defendant.

The opinion of the court was delivered by

PARKER, J.: This original proceedings in mandamus is brought by J. B. Patterson, a resident of Eastborough, for himself and others

similarly situated, against Marian Justus, in her official capacity as election commissioner of Sedgwick county, Kansas. In his pleading plaintiff asks that defendant be required to register him so that he may qualify to vote in the primary to be held in August, 1952.

Defendant filed answer asserting her desire to comply with all laws, but averred that she was forbidden to register plaintiff under the specific statute relating to registration of residents in cities of the third class.

Eastborough is a city of the third class lying to the east of the city of Wichita. It is partly in two townships, Wichita township, which lies immediately to the east of the city of Wichita, and Minneha township, which is adjacent to and borders Wichita township on the east.

Originally Wichita township was adjacent to the city of Wichita but Minneha township was not, being separated therefrom by Wichita township. With the growth of the city of Wichita the city boundaries were extended eastward until they passed through Wichita township and in 1948 encroached into Minneha township, making it also adjacent or contiguous to such city. The latter fact is important as will be noted in connection with pertinent statutes involved.

The city of Wichita has passed through various stages in qualifying its electors to vote. Originally its citizens merely went to the polls election day and voted. The clerks and judges of election knew the voters and therefore knew whether they were qualified to vote and their votes were subject to challenge if a question of qualification arose. Later they registered with the city clerk, and still later, with an election commissioner of the city. Those living in the rural areas outside of Wichita continued to vote without registration until 1933, when the legislature passed chapter 126, Laws 1933, which, as amended, is now G. S. 1949, 80-1701 to 1715, incl. Section 80-1701 provides for registration in certain townships in certain counties. It reads:

"That the citizens of all townships located in counties having more than 140,000 population and having less than $150,000,000 of assessed tangible property valuation, which townships are outside of cities now requiring registration of voters who are entitled to the right of suffrage, shall register according to the provisions of this act before being entitled to vote: *Provided, however, That the citizens of all townships located adjacent to any city of the first class having a population of 100,000 or more in counties having more than 140,000 population and having more than $150,000,000 of assessed tangible property*

*valuation shall register according to the provisions of this act before being entitled to vote."* (Emphasis supplied.)

The emphasized portion of the section of the statute just quoted applies to Sedgwick county and from the facts recited it appears that as of 1947 citizens of the city of Eastborough who resided in Wichita township were required to register in order to vote while those residing in that portion of Eastborough which was originally in Minneha township were not.

It should be noted that section 80-1707, a part of the same law, required persons to register with the county clerk while section 80-1722 denied those not registered the right to vote.

In 1947 the legislature passed the election commissioner law chapter 203, Laws 1947, now G. S. 1949, 19-3419 to 3436, incl., and transferred all powers of county clerks, city clerks in cities of the first class, election commissioners, and township officers in applicable counties to an election commissioner (see section 19-3422). Thereafter all citizens of the townships adjacent to Wichita who had previously been registered by the county clerk were required to register with the election commissioner of Sedgwick county. As heretofore indicated this statute applied to Wichita township because at that time such township was adjacent to the city of Wichita but it did not apply to Minneha township which was not so adjacent.

The section of the statute relied upon by the defendant in her answer is G. S. 1949, 19-3424, which reads:

"The election commissioner, as a part of his official duties shall have and exercise the following powers and authority, to-wit:

"(a) He shall establish and fix the boundaries of wards and precincts within the county and in all cities located in said county for election purposes, register electors of the county in all cases where registration is required by any provisions of the law of the state *except in cities of the second and third class located in said county,* accept and file nominations and declaration papers of candidates and declarations of party affiliation." (Emphasis supplied.)

From what has been related it is clear that under the provisions of one section of the statute (80-1701) J. B. Patterson, plaintiff herein, and other citizens of that part of Eastborough who reside in what was formerly Wichita and Minneha townships are required to register in order to qualify as electors while under the provisions of another (19-3424) the only official now authorized to register electors in those townships is directed to register all voters "where registration is required," "except in cities of the second and third class." Thus the all decisive issue presented by the pleadings becomes obvious.

Strict or narrow statutory construction could lead to the conclusion that Patterson and other qualified electors of Eastborough were deprived of their franchise under and by virtue of the terms of 19-3424, *supra*, through legislative error or omission. Of course, no such construction should be given to this or any other section of the statute.

In 29 C. J. S., § 37, the general rule is stated:

"The primary purpose of registration laws is to prevent the perpetration of fraud at elections by providing in advance thereof an authentic list of the qualified electors; and every part of a registration act must be so construed as to effectuate this purpose and to give electors the fullest opportunity to vote that is consistent with reasonable precautions against fraud. Likewise, all provisions of such laws should, if possible, be construed so as to avoid conflict." (p. 60.)

On the same subject see *McMillan v. Siemon*, 36 Cal. Appellate Reports 2d 721, 98 P. 2d 790, where it is said:

". . . The exercise of the franchise is one of the most important functions of good citizenship, and no construction of an election law should be indulged that would disfranchise any voter if the law is reasonably susceptible of any other meaning." (p. 726.)

See, also, *Funkhouser v. Landfried*, 124 W. Va. 654, 22 S. E. 2d 353, which reads:

". . . But, of course, this authority to require registration of voters, does not empower the Legislature to nullify or modify the constitutional right of a citizen to vote. Hence, registration laws must be framed with great caution, and construed liberally and favorably toward the right to vote. The failure of a voter to perform an act prescribed by the election statutes ought not deprive him of the privilege of voting, unless the statute plainly and clearly, by express provision or necessary implication, requires that result." (p. 661.)

Applying the simple and elementary rule recognized by the foregoing authorities it is clear that the citizens of Eastborough cannot be deprived of their right to vote. Likewise it is obvious the legislature had no such intention. It remains, however, to be determined whether Patterson and others in like position must register in order to vote. In the early case of *The State, ex rel., v. Comm'rs of Hamilton Co.*, 35 Kan. 640, 11 Pac. 902, a case involving construction of election registration laws, Mr. Justice Valentine said:

". . . Where a statute relating to registration, or indeed anything else, cannot in the nature of things be made to apply, it must be held that it does not apply, and that the legislature did not intend it should apply." (p. 646.)

From this it might be argued or even held that the portion of 19-3424, *supra*, which excepts from registration by the election commissioner those electors in cities of the second and third class can-

not be applied to the existing situation and, hence, no registration of voters in Eastborough is required. Obviously such holding would thwart the legislative intent. It cannot be denied the legislation was enacted for the purpose of identifying and qualifying voters prior to election day in the heavily populated rural areas immediately surrounding Wichita and Kansas City, Kan.

As to the exception in the statute relating to cities of the second and third class, the existing facts also clarify the intention. Electors in second class cities have been required to register with the city clerk for a period of many years (G. S. 1949, 12-901, *et seq.*) While no similar statutory provisions are made as to third class cities, registration with a city clerk has been made a prerequisite to voting by ordinance in a number of such cities. With these facts in mind the legislative intent becomes clear. The various statutes which have been referred to and others which could be noted were enacted to require registration of all voters in the counties, cities, and townships affected, and the exception in 19-3424, *supra,* was made only because it was thought that registration was already provided for in cities of the second class (by statute) and perhaps in some cities of the third class (by ordinance). While the last assumption was untrue so far as the electors in Eastborough are concerned, this should not defeat the obvious legislative intent to require registration of all electors either by the election commissioner or by a city clerk. And there being no ordinance of Eastborough requiring registration, it seems clear that the exception cannot apply and electors are required to register with the only official authorized to make registration, the defendant election commissioner.

As stated in *Lawhead v. County Court,* 129 W. Va. 167, 38 SE 2d 897:

"The Permanent Registration Law should not be construed so as to conflict with the general principles of law governing the exercise of the right of suffrage. . . . The spirit of a statute as opposed to the letter thereof controls. . . . The legislative intent is the true guide, and in arriving at that intent it may be necessary to exclude from the operation of the statute things within the letter but not the spirit thereof. . . ." (p. 172.)

We believe it manifest that the legislature intended that the election commissioner register qualified persons in Eastborough. While Eastborough is a third-class city, it is located in townships adjacent to the City of Wichita. When 80-1701, *supra,* is read with 19-3424, *supra,* it clearly appears that the clause, "excepting second-

and third-class cities" in the latter section was intended to apply only to second- and third-class cities which are not in townships adjacent to first-class cities.

The next result of this construction is to add by necessary implication to section 19-3424, *supra,* after "except in cities of the second- and third-class located in said county," the clause "but including electors living in second- and third-class cities lying in townships adjacent to cities of the first class having a population of 100,000 or more, in counties having more than 140,000 population and having more than $150,000,000 of assessed tangible property valuation."

With pertinent provisions of the statute construed as herein indicated it necessarily follows plaintiff is entitled to the relief sought in his petition and that the defendant, Commissioner of Elections of Sedgwick County, Kansas, should be and she is hereby directed to register plaintiff and all other qualified voters who appear and apply to be registered pursuant to and in conformity with the requirements of such statute and other applicable laws of this state relating to the registration of persons entitled to exercise the right of suffrage.

The writ prayed for is allowed and judgment is rendered against the defendant in accord with the views expressed in the opinion.