(905 P.2d 1072)

No. 73,258

VICKY CLINE, DIANE DEXTER, and DAVE COMPTON, *Appellants,*
v. RAMONA MEIS, NESS COUNTY ELECTION OFFICER, *Appellee.*

624

Opinion filed November 3, 1995.

*Paul R. Shepherd*, of Shepherd & Giefer, of WaKeeney, for appellants.

*Larry D. Tittel*, county attorney, for appellee.

Before LEWIS, P.J., RULON, J., and MARION W. CHIPMAN, District Judge Retired, assigned.

RULON, J.: Plaintiffs Vicky Cline, Diane Dexter, and Dave Compton appeal the district court's finding that the actions of the Ness County election officer, defendant Ramona Meis, in striking several names from three recall petitions, was not arbitrary or capricious. We affirm in part, reverse in part, and remand the cause with directions.

The underlying facts are not controverted and are as follows:

Plaintiffs filed three recall petitions with the Ness County election officer seeking recall elections for three members of the U.S.D. No. 303 Board of Education: Robert Clouston, James Frank and Mark Kerr. After a review of the petitions, the election officer struck a number of signatures on each petition, which brought the total number of signatures below the 241 required.

The election officer struck the signatures for the following reasons:

- Address did not exactly match the voter registration card;
- name was printed when voter registration card signed in cursive;
- signature not dated;
- change of address within the same precinct but not registered at the time petition signed;
- person not a registered voter at time petition signed but registered prior to time petition reviewed for sufficiency; and
- name not signed by elector because of physical disability but signed by another.

## STANDARD OF REVIEW

First, we must decide if the district court applied the correct standard of review.

The right of the people to recall elected officials is provided by Article 4, § 3 of the Kansas Constitution, which reads: "All elected public officials in the state, except judicial officers, shall be subject to recall by voters of the state or political subdivision from which elected. Procedures and grounds for recall shall be prescribed by law." "The Kansas Recall of Elected Officials Act, K.S.A. 25-4301 *et seq.*, governs the procedure required for voters to exercise their right to recall public officials." *Cline v. Tittel,* 20 Kan. App. 2d 695, 697, 891 P.2d 1137, *rev. denied* 257 Kan. 1091 (1995).

The issues presented are of first impression in Kansas and revolve around the interpretation of the statutes of the Kansas Recall of Elected Officials Act. The interpretation of a statute or constitution are questions of law, and this court's scope of review is plenary. "When determining questions of law, this court is not bound by the decision of the district court." *State v. Donlay,* 253 Kan. 132, 134, 853 P.2d 680 (1993).

As we understand, both parties agree that the issue before us is whether the election officer's action in striking certain names from the petitions was arbitrary and capricious. Plaintiffs argue that in light of the constitutionally protected right, the determination of whether the administrative action is arbitrary and capricious is to be determined by liberally interpreting the statutes to carry out this fundamental right. The defendant argues that the decision of an election officer is presumed valid, and the burden of proving the action arbitrary and capricious falls on the party challenging the action. Here, the district court specifically held there was a distinction between the right to vote and the right to sign a recall petition. The court found that recall is controlled by a specific statute and, therefore, should be strictly construed. The court held that current law required the address shown on the recall petition to be the same as shown on the voter's registration card and such provision should be strictly construed.

This record shows that to a large extent, defendant's actions were guided by documents provided by the Secretary of State's office in the form of a Kansas Election Law Handbook and a Petition Circulation checklist. Additionally, K.A.R. 7-28-1 provides standards by which an election officer is to determine the sufficiency of the

signatures on a petition. Initially, there is a question as to whether the Secretary of State's regulations and instructions go beyond the authority provided by statute. In Kansas:

"The legal principle is well established that administrative agencies are creatures of statute and their power is dependent upon authorizing statutes; therefore, any exercise of authority claimed by the agency must come from within the statutes either expressly or by clear implication. There is no general or common-law power that can be exercised by an administrative agency. *Pork Motel, Corp. v. Kansas Dept. of Health & Environment*, 234 Kan. 374, 378, 673 P.2d 1126 (1983); *Woods v. Midwest Conveyor Co.*, 231 Kan. at 770; 1 Am Jur. 2d, Administrative Law § 70, p. 866." *State ex rel. Secretary of S.R.S. v. Fomby*, 11 Kan. App. 2d 138, 141, 715 P.2d 1045 (1986).

Additionally, our Kansas Supreme Court has said:

"Where a state constitutional provision provides for the recall of public officials, recall is viewed as a fundamental right which the people have reserved to themselves. When the power of recall is a fundamental right, statutes governing the exercise of the power are to be liberally construed in favor of the ability to exercise it, and any limitations on that power must be strictly construed. 63A Am. Jur. 2d, Public Officers and Employees § 190." *Unger v. Horn*, 240 Kan. 740, 741, 732 P.2d 1275 (1987).

" 'A constitutional provision is not to be narrowly or technically construed, but its language should be interpreted to mean what the words imply to men [and women] of common understanding. [Citation omitted.] A constitution should not be interpreted in any refined or subtle sense, but should be held to mean what the words imply to the common understanding of men. [Citation omitted.] When interpreting the constitution, each word must be given due force and appropriate meaning.' " *State ex rel. Stephan v. Parrish*, 256 Kan. 746, 751, 887 P.2d 127 (1994) (quoting *Colorado Interstate Gas Co. v. Board of Morton County Comm'rs*, 247 Kan. 654, 660, 802 P.2d 584 [1990]).

We conclude the district court was incorrect in finding that the statutes regarding recall petitions should be interpreted narrowly. *Unger* clearly states that the applicable provisions are to be construed liberally and any restriction on such right is to be narrowly construed.

Article 43 of chapter 25 of the Kansas Statutes Annotated contains the provisions regarding recall of public officials. K.S.A. 25-4303 provides that the Secretary of State may adopt rules and regulations for the administration of recalls and such rules may specify any forms needed therefor.

K.S.A. 25-4304 reads in relevant part:

"(c) K.S.A. 25-4318 to 25-4331, inclusive, apply only to recall of all elected public officials who are provided by law to be elected at an election conducted by one or more county election officers, except those officers specified in subsections (a) [governor, legislature, and those elected by the entire state] and (b) [judicial officers]. For the purpose of·this act, officers to which this subsection apply are 'local officers.' "

K.S.A. 25-4319 provides:

"Subject to rules and regulations of the secretary of state, the recall election of a local officer shall be conducted by the county election officer of the county in which the petition is required to be filed."

K.S.A. 25-4324 reads in relevant part:

"The petitions shall be circulated in person by a sponsor and only in the election district in which such sponsor resides. No petition shall be circulated in more than one county, and the county election officer of the county in which each petition is circulated shall certify to the county election officer where petitions are required to be filed the sufficiency of the signatures on the petition. *Any registered elector of such election district may subscribe to the petition by signing such elector's name and address. . . .* The petition shall be signed only in ink. Illegible signatures unless accompanied by a legible printed name may be rejected by the county election officer."

K.A.R. 7-28-1 reads in relevant part:

"In determining the sufficiency of signatures or names on a petition, when such signatures or names are not identical to those in the registration books, the following rules shall apply:

. . . .

"(2) If a signature contains initials which are consistent with the names or initials as they appear in the registration books, and if the last name in the signature on the petition is identical to the last name in the registration books and the address is identical, the signature is proper and sufficient."

Defendant's argument that an appellate court may not try such a case de novo and substitute its judgment for that of the agency is correct as to matters of fact. However, if the court finds the administrative interpretation is erroneous as a matter of law, the court is not bound by the administrative interpretation and has a duty to take corrective steps. *Board of Johnson County Comm'rs v. Smith*, 18 Kan. App. 2d 662, 664, 857 P.2d 1386 (1993). The final construction of a statute or the constitution rests with the

courts. *National Collegiate Realty Corp. v. Board of Johnson County Comm'rs*, 236 Kan. 394, 404, 690 P.2d 1366 (1984); *Famous Brands Distributors, Inc. v. Board of Shawnee Co. Comm'rs*, 21 Kan. App. 2d 67, 894 P.2d 925 (1995).

The plain wording of K.S.A. 25-4324 provides the following requirements for a signature to be valid on a recall petition:

- A registered elector of the election district;
- signature of his or her name and address;
- subscribed within 90 days of the initial filing of the recall petition pursuant to K.S.A. 25-4322;
- signed in ink; and
- signatures must be legible unless accompanied by a legible printed name.

Any regulation or direction that provides for more than is expressly provided by statute is invalid. Logic requires that rejection of signatures based on such a regulation or instruction is similarly invalid and, therefore, arbitrary and capricious.

## THE ADDRESSES

The plaintiffs first argue that striking the signatures that were not accompanied by an address exactly matching the address on the voter registration cards was arbitrary and capricious. Defendant claims that she was merely following instructions on the Petition Circulation Checklist and following K.S.A. 25-4310, K.S.A. 25-4320, and K.A.R. 7-28-1.

K.S.A. 25-4310 applies to signatures on a petition to recall state officers and reads in relevant part: "Any registered elector of such election district or of the state, as the case may be, may subscribe to the petition by signing the elector's name and address as the same appears on the voter registration books." Importantly, the language in this statute differs from the language in K.S.A. 25-4324 which governs the recall of local officials.

There are several possible interpretations of K.S.A. 25-4310 and K.S.A. 25-4324. First, these are two statutes in the same act that deal with similar procedures, *i.e.*, the recall of an official. Thus, the court could construe them in pari materia and find that the legislative intent was to have electors sign the petition with their ad-

dresses as such addresses appear on the voter registration books. See *Guardian Title Co. v. Bell*, 248 Kan. 146, 151, 805 P.2d 33 (1991).

K.S.A. 25-4320 provides an example of the form for each recall petition. The form provides that each signer provide his or her name, street number or rural route (as registered), name of city, and date of signing. However, the statute expressly states that "[e]ach page of a petition for recall of a local officer shall be *in substantially the following form.*" (Emphasis added.) K.S.A. 25-4320(b). None of the statutes say the addresses must appear "exactly" as such appear on the voter registration.

On the other hand, a second interpretation could follow the rule that statutes which limit a fundamental right be construed narrowly against such limitation, and thus, the doctrine of *expressio unius est exclusio altrius* applies. Therefore, the legislature's inclusion of the phrase "as registered," which appears in the statutes governing the recall of state officials, could mean the legislature purposefully excluded such a provision in the statutes dealing with recall of local officials. See *State Dept. of Administration v. Public Employees Relations Bd.*, 257 Kan. 275, 291, 894 P.2d 777 (1995).

The legislature is presumed to understand the meaning of the words it uses and intends to use them. *Bank of Kansas v. Davison*, 253 Kan. 780, 788, 861 P.2d 806 (1993). If the legislature intended the addresses of local electors to exactly match the electors' addresses on the voter registration books, such a requirement could be mandated. Given the fundamental nature of the right of recall, we believe that the regulation is an improper restriction on the right to recall a local official.

This record shows that the defendant invalidated several signatures because of minor differences in the address as listed on the petition compared to the address listed on the voter registration books. Some examples are:

| Petition | | Registration |
|---|---|---|
| Wilford Hertel | RR 1 | RR 1, Box 52 |
| Paula Ray | 605 S. Penn | 602 S. Penn |
| Kenneth P. Williams | 306 Chestnut | 306 E. Chestnut |

| Ann Weilert | 105 School | 105 S. School |
| Elnora Yaeger | 418 S. Street | 418 S. Kansas |
| Julie Roane | Box 150, Beeler | HCR 1, Box 150, Beeler |
| Kevin Hertel | R.R. 1 | R.R. 1, Box 58 |
| Burneeta Chapman | Ness City | 311 North Iowa, Ness City |

We believe K.S.A. 25-4320 is designed to ensure that only registered electors of a given district may sign recall petitions for local officials from that district. To that end, the form requires a signature and an address. A logical conclusion is that if the signature is that of a registered elector from that district, and the address shows that the person signing resides in that district, no more is needed to show the signer is a registered elector from that district. Strict or narrow construction could lead to the conclusion that qualified electors of Ness City could be deprived of their fundamental right to participate in a recall petition by virtue of an administrative error.

The Kansas Supreme Court concluded that the primary purpose of registration law regulating elections is

" 'to prevent the perpetration of fraud at elections by providing in advance thereof an authentic list of the qualified electors; and every part of a registration act must be so construed as to effectuate this purpose and to give electors the fullest opportunity to vote that is consistent with reasonable precautions against fraud. Likewise, all provisions of such laws should, if possible, be construed so to avoid conflict." *Patterson v. Justus*, 173 Kan. 208, 211, 245 P.2d 968 (1952).

The same logic applies to recall elections. Where the Kansas Constitution provides for the right of registered electors to petition for recall, the only purpose of the statutes relating to the validity of the signatures is to prevent fraud. If the signature is of a registered elector and the address is in the subject district, an overly strict regulation or interpretation of the statute is improper. Consequently, defendant's application of K.A.R. 7-28-1 is an undue burden on the rights of electors to participate in a recall election.

This record shows that the above listed electors were all registered voters. The only reason their signatures were stricken was

because of the discrepancies in the addresses. The addresses listed, with the exception of Chapman, are sufficient to show each was an elector of the appropriate district and should not have been stricken.

Plaintiffs argue that because the election officer knew Chapman and where she lived, her name should not have been stricken.

Such a burden would place an undue responsibility on the election officer to use his or her personal knowledge to supplement information on the petition. "To liberally construe the statutes governing the exercise of the power to recall is not to ignore entirely the requirements of those statutes." *Hazelwood v. Saul*, 619 P.2d 499, 501, (Colo. 1980).

## PRINTED NAMES

This record shows that the defendant struck several names because such were printed on the petition but signed in cursive on the voter's registration card.

Plaintiffs argue the applicable regulations and statutes only require that the signatures on a petition be similar to those appearing on the voter registration record. Defendant argues that a signature is similar to a fingerprint which provides evidence that the elector is in fact the person who signed the petition. Defendant argues that anyone could print another's name, and a cursive signature is the only way to insure a registered elector signed the petition.

Previously, this court said:

"The law in Kansas is that a signature may be by mark, initials, typewriter, print or stamp, or any other symbol if by placing the symbol on the document the person so doing intended the symbol to be a binding signature." *Board of Johnson County Comm'rs v. Kearney*, 8 Kan. App. 2d 534, 535, 661 P.2d 823, *rev. denied* 233 Kan. 1091 (1983).

In *Kearney*, this court was asked to determine if the failure to file a disclaimer affidavit as required by statute subjected a tax foreclosure sale to being set aside. We concluded there was substantial competent evidence to support the trial court's finding that the affiant affixed his signature and the notary notarized the signature on the disputed document. In *Kearney*, the affiant printed his name on the affidavit. The trial court found that Kearney had the

necessary intent when he printed the signature on the affidavit and the notary so interpreted his act when she notarized the signature. 8 Kan. App. 2d at 535.

Defendant cites *In re Estate of Reed*, 229 Kan. 431, 625 P.2d 447 (1981), as support for the argument that "signature" means cursive signature. In *Reed*, the court was asked to determine if a will, which was executed in another state and contained no hand-written signature at the end, was valid in Kansas. Our Supreme Court concluded that statutes relating to the execution of wills must be strictly construed and that the word "subscribed at the end" in K.S.A. 59-609 means signed at the end. 229 Kan. at 438.

In *Southwest Engineering Co., Inc. v. Martin Tractor Co., Inc.*, 205 Kan. 684, Syl. ¶ 6, 473 P.2d 18 (1970), our Supreme Court concluded that pursuant to the Uniform Commercial Code, the term "signed" included any symbol executed or adopted by a party with the intention to authenticate a writing and such symbol may be printed, stamped, or written.

Under K.S.A. 25-4324, when the signatures on a petition are illegible, such may be rejected unless accompanied by a legible printed name. If the legislature did not contemplate for signatures to be in cursive there would be no need for the language "unless accompanied by a legible printed name."

" 'It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained.' " *City of Wichita v. 200 South Broadway*, 253 Kan. 434, 436, 855 P.2d 956 (1993). " 'There is a presumption that the legislature does not intend to enact use-less or meaningless legislation.' " *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992).

The language of K.S.A. 25-4324 indicates that the legislature intended that the signatures on a recall petition be in cursive. How-ever, because the right to vote in a recall is a fundamental right, an attempt to exclude those who are unable to write in cursive is improper. Consequently, in order to assure that only registered electors' signatures be counted, we believe the defendant was not unreasonable when requiring the signature to be in the same style (cursive or printed or by mark) as is shown on the voter's registra-

tion card. Of course, there are statutory provisions for those who can no longer sign because of a handicap. See K.S.A. 25-2909 and K.S.A. 25-1124(c).

Unquestionably, arbitrary or capricious conduct may be shown where an administrative action is not supported by substantial evidence. Substantial evidence is evidence possessing both relevance and substance and furnishes a substantial basis of fact from which the issues can be reasonably resolved. In order for a court reviewing an administrative action to conclude a lack of substantial evidence, the administrative decision must be so wide of the mark that such decision is outside the realm of fair debate. *In re Tax Refund Application of Affiliated Property Services, Inc.*, 19 Kan. App. 2d 247, 250, 870 P.2d 1343 (1993).

Under a fair reading of the provisions of K.S.A. 25-4324, we are unable to conclude that defendant's requiring a signature on a recall petition to be written in cursive when the signature on the voter's registration card is written in cursive, absent an indication of handicap, is arbitrary or capricious.

## NAMES WITHOUT DATES

Plaintiffs next argue the defendant acted in an arbitrary and capricious manner when striking the names of petitioners who did not date their signatures or merely placed ditto marks in the date column. Defendant specifically argues that K.S.A. 25-4324 requires that the signatures be obtained within 90 days of the initial filing of the recall petition and that without those dates, it would be impossible to determine if the petitions met the statutory requirements.

K.S.A. 25-4324 reads in relevant part: "The necessary signatures on a petition shall be secured within 90 days from the date that the copy of the petition subscribed by the members of the recall committee is filed pursuant to K.S.A. 25-4322." Nothing in K.S.A. 25-4324 requires the signatures to be dated. In the suggested form found in K.S.A. 25-4320, the date of signing is provided as a requirement.

We found no Kansas law on this particular question. Plaintiffs cite to Att'y Gen. Op. No. 84-41, which interpreted K.S.A. 19-204

and K.S.A. 1983 Supp. 25-3602 concerning a petition to increase the number of county commissioners. K.S.A. 25-3602 governs the form of such a petition.

The question presented in the above Attorney General's opinion was whether the absence of a date next to the signature invalidates the entire petition. The opinion reads in material part:

"In our opinion, incomplete notations of the date of signature . . . do not constitute so substantial an irregularity as to invalidate the entire petition. This is true as long as the incomplete dates do not make it impossible for the election officer to determine that the petition was timely filed. The requirement that the date be noted on the petition is necessary to allow the election officer to determine the timeliness of the petition. If the election officer may ascertain from dated signatures appearing before and after the incomplete dates or from other information on the petition that the petition was timely filed, such omissions do not invalidate the entire petition.

. . . .

"We conclude accordingly that incomplete notations of the date of signature on a petition do not constitute a defect or irregularity which would invalidate an entire petition or the individual signatures, if the incomplete notations of the date do not prevent the election officer from determining whether the petition was filed with[in] the time limit established by the statute." Att'y Gen. Op. No. 84-41.

When construing the statutes liberally in favor of validating recall petitions, and strictly against statutes or regulations which restrict such a right, we conclude that "ditto marks" to represent the date of a signature are sufficient where the date above the ditto marks indicated the signature was timely. Additionally, where a date block is blank, the election officer should examine the lines preceding and following the challenged signature and assume the signature was obtained between the two dates. "[I]t is well established that a petition will not be invalidated by trifling errors or omissions, or by unimportant irregularities and defects." 26 Am. Jur. 2d, Elections § 189.

Under the facts presented, the defendant should not have stricken the names of otherwise qualified electors merely because such persons used ditto marks for the date or because such persons failed to date their signatures, provided the signatures preceding

and subsequent to the challenged electors' signatures show the signatures were timely.

## NAMES WITHIN THE CORRECT PRECINCT

Next, we must decide if the defendant erred when striking names of electors whose addresses did not match the addresses stated on voter registration rolls but such electors resided within the correct precinct.

Plaintiffs argue defendant improperly required that the address of each registered elector match the address listed on the voter's registration card. This argument differs from a previous issue concerning minor discrepancies in address. The electors challenged here have moved to a different address but remained within the same voting precinct.

K.S.A. 25-4324, states that "[a]ny registered elector of such election district" may sign the petition. Therefore, the narrow issue becomes who is a "registered elector" of a district and when is such a designation measured; at the time of signing the petition or the time the election officer verifies the petition?

Article 5, § 1 of the Kansas Constitution provides that "[e]very citizen of the United States who has attained the age of eighteen years and who resides in the voting area in which he or she seeks to vote shall be deemed a qualified elector." However, plaintiffs' argument misses the mark because the recall statute says "registered" elector. Presumably an elector means a qualified elector, but the statute requires such elector to be registered in the applicable voting district.

Under K.S.A. 25-2316c(b), when a registered voter changes residence, he or she must reregister in order to be eligible to vote. However, if the change in residence is within the same precinct, and the voter is otherwise qualified, the voter shall be permitted to vote if the voter completes a registration card, makes an oath in the prescribed form, and provides proof of address. Such procedure may take place at the polls when the elector votes.

Defendant argues that the electors in this case did not present registration cards and oaths when they signed the petition and, therefore, their names were properly stricken.

The defendant's argument is circular. If a voter reregisters prior to the election, there is no need to complete the registration at the voting place in compliance with the statute. The only way K.S.A. 25-2316c(b) is operative is if the elector has not reregistered in time to vote at an election.

Similarly, as long as an elector is registered in the applicable precinct at the time the petition is both signed and filed, such elector's name should be counted. Unquestionably, these persons were registered in the appropriate precinct at the time such persons signed the petition and reregistered prior to the petition being filed. Therefore, these names should not have been stricken. If however, a signer was not registered at any address in the subject precinct at the time he or she signed the petition, such name was properly excluded.

## DISABLED ELECTOR

This issue is similar to the above issue regarding printed signatures.

Plaintiffs argue that the defendant improperly struck the name of a disabled individual whose wife signed the recall petition for him.

The record shows defendant was familiar with Forrest Walker and knew he probably did not have the physical ability to sign his name. Defendant compared Forrest Walker's signature against the voter's registration card, determined Walker's signatures were different, and struck his name from the petition.

Defendant argues the applicable statutes provide a means for a disabled person to have someone sign for them. K.S.A. 25-1124(c) provides that a disabled person may submit an absentee ballot provided a written statement accompanies the ballot, signed by the person who signed for the elector, and the statement says the person so signing has not exercised any undue influence on the elector. Furthermore, K.S.A. 25-2909 provides that a disabled person may have another person vote for him or her. Defendant argues that no statement was submitted and, necessarily, Walker's name was properly stricken.

In *Lambeth v. Levens*, 237 Kan. 614, 702 P.2d 320 (1985), our Supreme Court examined the validity of an absentee ballot where another person had signed for a disabled voter but had not submitted an affidavit as required by statute. The *Lambeth* court said: "When a disabled voter, innocently depending on the assistance given, has his ballot marked, he is entitled to have it counted, in the absence of proof that his directions were not followed." 237 Kan. 614, Syl. ¶ 1.

As in *Lambeth*, here, there is no evidence that any voter who was not entitled to assistance received it, and no indication the petition was not marked as directed. 237 Kan. at 617. We are convinced defendant erred in striking Walker's signature. The failure to submit the written statement was a minor irregularity and should not prevent Walker's vote from counting.

We affirm in part, reverse in part, and remand the cause with directions to recount the number of signatures in a manner consistent with this opinion.